United States v. Barlow, 83 F.4th 773 (2023)
2023 Daily Journal D.A.R. 10,082

83 F.4th 773
United States Court of Appeals, Ninth Circuit.

UNITED STATES of America, Plaintiff-Appellee,
v.
John Lee BARLOW, Defendant-Appellant.

No.22-30030
|
Argued and Submitted June 6, 2023 Seattle, Washington
|
Filed October 4, 2023

**Synopsis**
**Background:** Defendant pled guilty in the United States District Court for the District of Montana, Donald W. Molloy, J., to possessing a firearm as a felon, and was sentenced to 77 months in prison followed by three years of supervised release. Defendant appealed.

**Holdings:** The Court of Appeals, Callahan, Circuit Judge, held that:

lack of jury determination of sentencing enhancement for possessing firearm in connection with another felony did not violate Sixth Amendment or due process;

evidence supported sentencing enhancement for using or possessing firearm in connection with another felony; and

prior Georgia conviction for aggravated assault was a crime of violence warranting increase in base offense level.

Affirmed.

Bea, Senior Circuit Judge, filed opinion concurring in part, dissenting in part, and dissenting in judgment.

**Procedural Posture(s):** Appellate Review; Sentencing or Penalty Phase Motion or Objection.

**\*776** Appeal from the United States District Court for the District of Montana, Donald W. Molloy, District Judge, Presiding, D.C. No. 9:21-cr-00040-DWM-1

**Attorneys and Law Firms**

John Rhodes (argued), Assistant Federal Defender; Rachel Julagay, Federal Defender; Federal Defenders of Montana, Missoula, Montana; for Defendant-Appellant.

Karla E. Painter (argued) and Timothy A. Tatarka, Assistant United States Attorneys; United States Attorney's Office, Missoula, Montana; for Plaintiff-Appellee.

Before: Mary M. Schroeder, Consuelo M. Callahan, and Carlos T. Bea, Circuit Judges.

Opinion by Judge Callahan;

Partial Concurrence and Partial Dissent by Judge Bea

# OPINION

CALLAHAN, Circuit Judge:

John Barlow pled guilty to possessing a firearm as a felon, in violation of 18 U.S.C § 922(g)(1). He was sentenced to 77 months in prison followed by three years of supervised release. On appeal, Barlow raises three challenges to the district court's sentencing calculation under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). First, Barlow argues that the district court's application of a four-level enhancement for possessing the firearm in connection with another felony violated his Fifth and Sixth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). Second, Barlow asserts that the application of a four-level enhancement was clear error because the finding that Barlow used or possessed a firearm in connection with the felony of assault with a weapon under Montana law is not supported by clear and convincing evidence. Third, Barlow argues that the district court erred by determining that his prior conviction for aggravated assault was a "crime of violence" because under Georgia law that crime can be committed recklessly, and thus the district court selected the incorrect Guidelines range as a starting point for its

sentencing determination. We have jurisdiction under 28 U.S.C. § 1291, we reject these arguments, and we affirm.

***777 I.**

In August 2021, Barlow was indicted for possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). Following Barlow's motion to change his plea to guilty, the Government filed an offer of proof which included the fact that in 2013 Barlow had been convicted in Georgia of two counts of felony aggravated assault. It also included the fact that on May 23, 2021, days before officers discovered the firearm in Barlow's possession following his arrest on an unrelated burglary, Barlow had been involved in an altercation involving a gun in a parking lot. Barlow pled guilty to the sole count in the indictment without a plea agreement and the district court accepted his plea.

The Presentence Investigation Report ("PSR") prepared for the district court contained supporting details. In relevant part, it stated that on July 9, 2013, Barlow was sentenced to 10 years' incarceration (with 8 years suspended) in Cobb County Superior Court for two counts of felony aggravated assault.[1] At that time, Barlow signed a form acknowledging that it was unlawful for him to possess or purchase a firearm including a rifle, pistol, or revolver, or ammunition, pursuant to federal law.

The PSR also provided the following details about the parking lot altercation:

> On May 23, 2021, an officer with the Kalispell Police Department (KPD) responded to a call about a disorderly male pulling a gun on the reporting party. Upon arrival, the officer spoke with Jeff Eickert, the reporting party, who advised he was waiting in the parking lot of the Asian Buffet when a dodge pickup pulled up and stopped abruptly. The driver got out of the vehicle and was screaming. Eickert asked the driver what was wrong, and the driver lifted up his shirt exposing a holstered gun. He ultimately placed his hand on the gun and stated he was the police.
> 
> The suspect left the scene in his vehicle. Eickert provided the officer a description of the suspect and pictures of the vehicle taken by his girlfriend, Brenda Benson. In one of the pictures, the officer observed the suspect with a gun on his hip. Based on the totality of circumstances, description of the suspect, and the vehicle's registration, the officer believed the suspect was Barlow. As the conversation continued with Eickert, the officer learned Barlow never threatened him or pointed the firearm at him. Benson spoke with an officer and reported the male acted like he was going to shoot them. She acknowledged she "felt very threatened." The officer obtained video surveillance which reflected the suspect had a verbal exchange with Eickert, placed his left hand on his hip, and approached Eickert and Benson with his hand still on his hip.

The PSR noted that just over a week later, on June 1, 2021, an officer with the Kalispell Police Department arrested Barlow for an outstanding warrant stemming from an unrelated burglary charge. Barlow was asked about the firearm he possessed on May 23, 2021, and he initially denied possessing a firearm until law enforcement explained they had pictures of him with it. Barlow denied the firearm was part of the burglary and stated he had purchased the firearm. On the same day, law enforcement searched Barlow's residence and located a Glock 23 .40 caliber, semi-automatic pistol in his bedroom matching the description of *778 the firearm he possessed during the parking lot altercation on May 23, 2021.

The PSR calculated a base offense level of 24 under U.S.S.G. § 2K2.1(a)(2) because it concluded Barlow had at least two prior felony convictions for either a crime of violence or a controlled substance offense. It added four levels under U.S.S.G. § 2K2.1(b)(6)(B) because he possessed the firearm in connection with another felony offense, specifically assault with a weapon in violation of Mont. Code Ann. § 45-5-213 based on his uncharged conduct during the May 23, 2021, parking lot altercation. The PSR subtracted three levels for

acceptance of responsibility, resulting in a total offense level of 25. With a criminal history category of VI, the PSR concluded that Barlow's Guidelines range was 110 to 120 months (based on the ten-year statutory maximum).

Barlow filed written objections to the PSR, arguing that his prior convictions did not constitute either a "crime of violence" or a "controlled substance offense" and therefore the base offense level should have been 14, not 24. He also argued that the parking lot altercation did not constitute "another felony offense" and therefore the four-level enhancement should not be applied. The probation officer responsible for preparing the PSR did not revise the report in response to the objections and the Government argued for the base offense level outlined by probation and the four-level enhancement in its sentencing memorandum.

The district court held a sentencing hearing on February 10, 2022. The Government called a single witness, Brenda Benson, to testify about the facts supporting the four-level enhancement. She testified that during the parking lot altercation on May 23, 2021, Barlow approached her and her boyfriend Jeff Eickert and began yelling and cursing at them, accusing them of damaging his bumper. Benson testified that Barlow then exited his truck to approach them, lifted his shirt to display a firearm holstered on his hip, and momentarily rested his hand on it, multiple times. Benson testified that she felt threatened and in fear for her life based on Barlow's "irrational" and "belligerent" conduct, and the fact that she observed he had two firearms.[2] On cross-examination, Benson admitted that Barlow never pointed the gun at them, nor did he verbally threaten physical harm. The Government introduced as exhibits photos Benson took during the altercation showing a firearm holstered on Barlow's hip, a blurry surveillance video from a nearby casino depicting the interaction, and the recording of Eickert's 911 call following the incident.

The district court then heard arguments from the parties and issued an oral ruling from the bench. Over Barlow's objection, the district court first concluded that based on the testimony of Benson, the surveillance video, and the photographs provided, the government had shown by clear and convincing evidence that Barlow possessed a firearm in connection with another felony offense (assault with a weapon under Montana law) and thus the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) applied. Although the district court acknowledged that the question of "use of a weapon" was a difficult one under the facts, it found that the evidence established that Barlow "purposely or knowingly cause[d] reasonable apprehension of serious bodily injury in another by *779 use of a weapon or what reasonably appears to be a weapon." The district court also concluded, over Barlow's objection, that his previous conviction for aggravated assault under Georgia law was a "crime of violence" as defined by the Guidelines.

Based on those determinations, the district court found that Barlow's base offense level was 20 under U.S.S.G. § 2K2.1 because Barlow had one prior conviction for a crime of violence. The district court also found the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) applied. The district court further found that Barlow's base offense level should be reduced by two levels for acceptance of responsibility and by one additional level for assisting authorities in the investigation. With these adjustments, the district court found that Barlow's total offense level was 21, and that with a criminal history category of VI, Barlow's Guidelines sentencing range was 77 to 96 months' imprisonment. The district court sentenced Barlow to 77 months' imprisonment, to be followed by three years' supervised release.

The next day, the district court entered the judgment. Barlow timely appealed.

II.

On appeal, Barlow raises three objections to his sentence: (1) the district court's application of a four-level enhancement for possessing the firearm in connection with another felony violated his Fifth and Sixth Amendment rights under Apprendi, 530 U.S. at 466, 120 S.Ct. 2348, and Alleyne, 570 U.S. at 99, 133 S.Ct. 2151; (2) the application of the same four-level enhancement was clear error because there was insufficient evidence to support the finding that Barlow used or possessed a firearm in connection with the felony of assault with a weapon under Mont. Code Ann. § 45-5-213; and (3) the district court erred by determining that Barlow's prior conviction under Georgia law for aggravated assault was a "crime of violence" resulting in an increased base offense level calculation under the Guidelines.

A. Constitutional Arguments

We review de novo whether a sentence violates a defendant's constitutional rights. *United States v. Hunt*, 656 F.3d 906, 911 (9th Cir. 2011). The Guidelines provide for a four-level sentencing enhancement when the defendant "[u]sed or possessed any firearm or ammunition in connection with another felony offense[.]" U.S.S.G. § 2K2.1(b)(6)(B). The district court found by clear and convincing evidence that Barlow possessed the firearm in connection with another felony offense, namely assault with a weapon under Montana law. Barlow argues that this violated his constitutional rights.

The underlying premise for Barlow's argument is that following *Apprendi* and *Alleyne*, a sentencing enhancement based on a new offense should not be decided by a judge. Instead, Barlow contends the question of whether he possessed the firearm in connection with another felony offense should be considered by a jury and decided beyond a reasonable doubt. Barlow also argues that the enhancement increases his sentence "without sufficient notice" that he would be punished for "another felony offense." Neither argument is persuasive.

First, as a constitutional matter, the determination of a sentencing enhancement based on a new offense (a "sentencing fact") can be made by a judge without a jury and by a lower standard of proof.[3] ***780** See *United States v. Lonich*, 23 F.4th 881, 910 (9th Cir. 2022); *see also Rita v. United States*, 551 U.S. 338, 352, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). Moreover, there is no basis for extending the reasoning of *Apprendi* and *Alleyne* to Barlow's circumstance. Specifically, there is no mandatory minimum sentence at play and the district court's application of the four-level enhancement still placed Barlow's Guidelines range within the maximum possible sentence for the offense to which he pled guilty. As the Supreme Court in *United States v. Watts*, 519 U.S. 148, 155, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) explained, "consideration of information about the defendant's ... conduct at sentencing does not result in 'punishment' for any offense other than the one [for] which the defendant was convicted"; rather, the defendant is punished "only for the fact that the present offense was carried out in a manner that warrants increased punishment." *Id.* (quoting *Witte v. United States*, 515 U.S. 389, 401, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995)). Accordingly, this is not a circumstance to which the right to a jury would typically attach, nor is it a circumstance requiring that the other felony offense be proved beyond a reasonable doubt, and thus, neither *Apprendi* nor *Alleyne* apply.

Second, Barlow has not shown a constitutional violation as a result of insufficient notice of the basis for the sentencing enhancement. He fails to cite any authority which requires that another offense giving rise to a sentencing enhancement be identified in the charging indictment or at arraignment, and we are aware of no such authority. Rather, the Guidelines make clear that finding "another felony offense" for purposes of U.S.S.G. § 2K2.1(b)(6)(B) does not require a criminal charge be brought or a conviction obtained. *See United States v. Bare*, 806 F.3d 1011, 1016 (9th Cir. 2015). Barlow received all the notice that is required for the sentencing enhancement. He has not shown that the district court violated his rights under the Fifth and Sixth Amendments.

### B. Sufficiency of the Evidence Supporting "Use of a Weapon"

Barlow also argues that the district court erred in applying the enhancement under U.S.S.G. § 2K2.1(b)(6)(B) because there was insufficient evidence to support the district court's finding that he used or possessed a firearm in connection with another felony offense. We "review the district court's interpretation of the Sentencing Guidelines de novo, its application of the Guidelines to the facts of the case for abuse of discretion, and its factual findings for clear error." *United States v. Kirilyuk*, 29 F.4th 1128, 1133 (9th Cir. 2022) (citing *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc)). On a sufficiency of the evidence challenge, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it .... Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (citations omitted). An even greater deference is due where, as here, the district court weighs the credibility of a witness. *Id.* at 575, 105 S.Ct. 1504.

The district court found that Barlow used or possessed a firearm in connection with the felony of assault with a weapon ***781** under Mont. Code Ann. § 45-5-213(1)(b), which provides that a person commits that offense if the person purposely or knowingly causes "reasonable apprehension of serious bodily injury in another by *use of a weapon* or what reasonably appears to be a weapon." Mont. Code Ann. § 45-5-213(1)(b) (emphasis added). In making that finding, the district court considered the

testimony of what it determined to be a credible first-hand witness, Benson, as well as documentary evidence including photographs taken by Benson during the incident, a surveillance video, and a recording of the 911 call.

Barlow contends that the surveillance video and recording of the 911 call undermine, and in some cases contradict, Benson's testimony, and therefore her testimony cannot be used to support the finding. For example, according to Barlow, the video does not show Barlow touching the firearm or raising his shirt to display the firearm, as Benson alleged in her testimony. Without her testimony, Barlow asserts that the Government presented no evidence that he ever "used" the firearm, as required to prove the offense under Montana law.

We disagree. We conclude that the district court's account of the evidence is plausible in light of the record viewed in its entirety. Benson testified that Barlow confronted and yelled at her and Eickert, acting irrationally, while repeatedly placing his hand on a holstered firearm on his hip. She testified that she felt threatened and feared for her life. The photographs offered to the court showed a holstered firearm on Barlow's hip. The surveillance video, although admittedly very blurry, confirmed that Barlow appeared to angrily confront the couple. The 911 call reflected Eickert's recollection of the incident, and he reported that Barlow pulled a gun out of his belt. While Barlow is correct that there was no evidence that he ever fired the gun, pointed the gun, or made a direct verbal threat, such evidence is not required to establish assault with a weapon under Montana law. See *State v. Smith*, 322 Mont. 206, 95 P.3d 137, 143 (2004) (explaining that the victim need not even see the weapon to sustain a conviction based on "reasonable apprehension"). To the extent the district court discounted any alleged contradictions between the surveillance video and 911 call and Ms. Benson's testimony, this was not clear error. Barlow has not shown that there was insufficient evidence to support the district court's finding that he used or possessed a firearm in connection with another felony offense for purposes of applying the enhancement under U.S.S.G. § 2K2.1(b)(6)(B).

### C. Increased Base Offense Level for a "Crime of Violence"

We review de novo whether a defendant's prior conviction qualifies as a "crime of violence" under the Guidelines. See *Gasca-Ruiz*, 852 F.3d at 1174. For violations of 18 U.S.C. § 922(g)(1), felon in possession of a firearm, courts apply U.S.S.G. § 2K2.1. Section 2K2.1(A)(4)(A) provides a base offense level of 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." The district court concluded that Barlow's prior conviction for two counts of aggravated assault under Georgia law qualifies as a crime of violence and applied an increased base offense level in determining Barlow's sentence.

We begin (and end) our inquiry with the first definition set forth in U.S.S.G. § 4B1.2—the "elements clause" *782 (also known as the "force clause").[4] Under that definition, a crime of violence "means any offense under federal or state law ... that ... has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). To determine whether the prior offense qualifies pursuant to the elements clause, we only ask "whether the prior offense does in fact have one of those elements" —we do not compare the elements of the crime of conviction with the elements of the generic federal crime. *United States v. Alvarez*, 60 F.4th 554, 559 (9th Cir. 2023).

Here, the district court properly used the modified categorical approach to determine that Barlow's prior conviction for aggravated assault qualified as a crime of violence. *United States v. Door*, 917 F.3d 1146, 1152 (9th Cir. 2019) (citing *Mathis v. United States*, 579 U.S. 500, 505, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016)); see also *United States v. Moss*, 920 F.3d 752, 757–58 (11th Cir. 2019), opinion reinstated, 4 F.4th 1292 (11th Cir. 2021) (en banc) (holding that Georgia's aggravated assault statute is divisible as to both the aggravator element, and the type of simple assault committed). Under the modified categorical approach, we may consult *Shepard* documents, a limited class of documents, including the indictment, jury instructions, or plea agreement, to determine which specific crime a defendant was convicted of committing.[5] *Door*, 917 F.3d at 1151–52; *Shepard v. United States*, 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). We then apply the elements clause to the specific crime of conviction to determine whether it qualifies as a "crime of violence." *Door*, 917 F.3d at 1152.

In 2013, Barlow was convicted of two counts of aggravated assault. Aggravated assault under Georgia law has two elements: "(1) commission of a simple assault as

defined by [O.C.G.A. §] 16-5-20(a) and (2) the presence of one [ ] statutory aggravator[ ]" under O.C.G.A. § 16-5-21(b). *Patterson v. State*, 299 Ga. 491, 492, 789 S.E.2d 175 (2016) (quotations and citations omitted). Simple assault can be committed in one of two ways: "(1) [a]ttempt[ing] to commit a violent injury to the person of another; or (2) [c]ommit[ting] an act which places another in reasonable apprehension of immediately receiving a violent injury." O.C.G.A. § 16-5-20(a).

The key *Shepard* document in the record is the indictment, which confirms on the cover page that Barlow pled guilty to the offense charged. The indictment contains two counts. Count One charged Barlow:

> **\*783** with the offense of AGGRAVATED ASSAULT for that the said accused ... did unlawfully make an assault upon the person of Crushon Person, with a handgun, the same being a firearm, a deadly weapon and an object which, when used offensively against a person, is likely to and actually does result in serious bodily injury, *by striking said Crushon Person* with said handgun ....

(emphasis added). Count Two charged Barlow:

> with the offense of AGGRAVATED ASSAULT for that the said accused ... did unlawfully make an assault upon the person of Crushon Person, with a handgun, the same being a firearm, a deadly weapon and an object which, when used offensively against a person, is likely to and actually does result in serious bodily injury, *by shooting said Crushon Person* with said handgun ....

(emphasis added).

Barlow concedes that the indictment establishes that he was convicted of committing the version of aggravated assault found in O.C.G.A. § 16-5-21(a)(2) (known as the aggravator element)—simple assault committed with a deadly weapon. But he argues that the indictment does not indicate which type of simple assault formed the basis for his conviction—attempting to commit a violent injury under O.C.G.A. § 16-5-20(a)(1) or placing another in reasonable apprehension of receiving a violent injury under § 16-5-20(a)(2). Accordingly, Barlow asserts that we must presume that his conviction rested upon the least of the acts criminalized by the statute (here § 16-5-20(a)(2), placing another in apprehension of receiving a violent injury), *see Moncrieffe v. Holder*, 569 U.S. 184, 190–91, 133 S.Ct. 1678, 185 L.Ed.2d 727 (2013). He contends this does not qualify as a "crime of violence" under the elements clause. See *Moss*, 920 F.3d at 757–58; *United States v. Carter*, 7 F.4th 1039, 1043 (11th Cir. 2021).

Barlow reasons that the Supreme Court of Georgia has held the "reasonable apprehension" form of simple assault may be committed with a mens rea of recklessness because it "does not require proof of specific intent." *Patterson*, 299 Ga. at 493, 789 S.E.2d 175. Relying on the Eleventh Circuit's holdings in *Moss* and *Carter*,[6] Barlow argues that recklessness is an insufficient mens rea for a "crime of violence" under *Borden v. United States*,[7] ––– U.S. ––––, 141 S. Ct. 1817, 1821–22, 210 L.Ed.2d 63 (2021) (holding that an offense is not a "violent felony"—and thus, not a "crime of violence"—"if it requires only a mens rea of recklessness—a less culpable mental state than purpose or knowledge"); see also *Moss*, 920 F.3d at 758; *Carter*, 7 F.4th at 1043.

**\*784** Barlow's approach may be logical, but we need not decide whether a reasonable apprehension form of simple assault constitutes a "crime of violence" because Barlow's indictment confirms that he committed the assault "by striking [the victim] with said handgun" and "by shooting [the victim] with said handgun,"[8] not by placing the victim in reasonable apprehension of receiving a violent injury.[9] The charges against Barlow could only aver an attempted battery form of simple assault under O.C.G.A. § 16-5-20(a)(1)—that is, that Barlow "attempt[ed] to commit a violent injury to the person of another."

Barlow's attempt to analogize this case to the facts

presented in *Moss* and *Carter* is unpersuasive. The Eleventh Circuit in *Moss* and *Carter* did not provide its reasoning for concluding that the qualifying language in each indictment did not foreclose the averment of a "reasonable apprehension" form of simple assault. *Moss*, 920 F.3d at 758; *Carter*, 7 F.4th at 1043. But the indictment in *Moss* charged the defendant for assaulting the victim "with his mouth," *Moss*, 920 F.3d at 755, while the indictment in *Carter* charged the defendant for assaulting the victim by "shooting *at*" (rather than "shooting") him, *Carter*, 7 F.4th at 1044.[10] Georgia case law establishes that these charges can aver a reasonable apprehension assault, *see, e.g., Jordan v. State*, 322 Ga.App. 252, 744 S.E.2d 447, 451 (2013) (considering "by shooting at" language in indictment), whereas aggravated assault committed "by striking" and "by shooting" the victim cannot, *see, e.g., State v. Thomas*, 350 Ga.App. 763, 830 S.E.2d 296, 299–300 (2019) (considering "by shooting" language in indictment). Although this distinction may seem technical, it is nevertheless meaningful to our analysis, particularly because under Georgia law, the attempted battery form of simple assault under O.C.G.A. § 16-5-20(a)(1) is properly charged when, as here, the battery is completed (for example, the indictment confirms Barlow was charged with committing aggravated assault by "shooting" and "striking" the victim rather than merely "shooting at" the victim). *See Scott v. State*, 141 Ga.App. 848, 234 S.E.2d 685, 686–87 (1977).

Barlow cites three Georgia Supreme Court decisions, which he argues establish that an indictment alleging aggravated assault "by striking" or "by shooting" could be proven under the reasonable apprehension form of simple assault. *See Johnson v. State*, 281 Ga. 229, 637 S.E.2d 393 (2006); *Chase v. State*, 277 Ga. 636, 592 S.E.2d 656 (2004); *Simpson v. State*, 277 Ga. 356, 589 S.E.2d 90 (2003). But these cases do not support his assertion. Rather, what ***785** Johnson* and *Simpson* suggest is that while a jury may be given an instruction which defines both methods of committing simple assault, to convict a defendant of aggravated assault "by striking" or "by shooting," it remains "necessary that the evidence show beyond a reasonable doubt that the defendant attempted to cause a violent injury to the alleged victim."[11] *Johnson*, 637 S.E.2d at 395 (considering an indictment which charged the defendant with assaulting the victim by striking her with a gun); *Simpson*, 589 S.E.2d at 92–93 (considering an indictment which charged the defendant with assaulting the victim by shooting him with a gun); *see also Chase*, 592 S.E.2d at 658 (noting "[w]hile there was no question that appellant fired a gun through the floor, striking his wife in the room below in the top of her head, there was no evidence from which the jury could find the victim had been placed in reasonable apprehension of immediately receiving a violent injury.").

We disagree with the Partial Dissent's characterization of the holdings in *Simpson* and *Johnson* as commanding a different result here. In both of those cases, the defendants argued that the trial court violated their right to due process by instructing the juries that they could convict for aggravated assault in a manner not alleged in the indictment, "by striking" in *Johnson* and "by shooting" in *Simpson*. The Georgia Supreme Court in both cases rejected the arguments and clarified that the jury instructions provided did not alter the alleged method of committing aggravated assault as stated in the indictments by "simply defin[ing] both methods of committing simple assault." *Simpson*, 589 S.E.2d at 93; *Johnson*, 637 S.E.2d at 395. Neither case stands for the proposition that the language contained in Barlow's indictment makes it impossible to determine which specific form of simple assault Barlow pled guilty to committing.

We therefore hold that Barlow's conviction for aggravated assault necessarily has as an element the use, attempted use, or threatened use of physical force against the person of another, and therefore qualifies as a "crime of violence" under the elements clause.[12]

### III.

In conclusion, we affirm because Barlow has not shown that the district court erred in calculating his sentence under the Guidelines. Barlow has not shown that applying the four-level enhancement violated his rights under the Fifth or Sixth Amendments. He has not shown that the district court's factual finding that Barlow possessed the firearm in connection with his commission of assault with a weapon under Montana law is erroneous. Finally, the district court correctly determined that Barlow's ***786** prior Georgia conviction for aggravated assault was a "crime of violence."

**AFFIRMED.**

BEA, Circuit Judge, concurring in part, dissenting in part, and dissenting in the judgment:

I agree that the district court properly found that, for sentencing purposes, Defendant-Appellant John Barlow used or possessed a firearm in connection with a felony offense under Montana law. *See* U.S.S.G. § 2K2.1(b)(6)(B); *United States v. Watts,* 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). But I disagree that Barlow's Georgia conviction for aggravated assault, *see* O.C.G.A. § 16-5-21(a)(2), is categorically a "crime of violence" under the Sentencing Guidelines, *see* U.S.S.G. §§ 2K2.1(a), 4B1.2(a). In concluding that Barlow's conviction is a crime of violence, the district court here professedly applied its "common sense," rather than the categorical approach. The majority similarly affirms. But because the categorical approach demands a contrary result, I would vacate Barlow's sentence and remand for resentencing.

I respectfully dissent.

### I.

A "crime of violence" is one that has "as an element, the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). To determine whether Barlow's aggravated assault conviction meets that definition, we must apply the "categorical approach," which we recently have summarized as follows:

> To determine whether a conviction is a crime of violence, we do not look to the facts underlying the conviction. Instead, the Supreme Court requires us to employ a categorical approach that looks to the statutory definition of the offense and the fact of conviction itself. If the statute criminalizes conduct beyond that covered by the Guidelines—regardless of the defendant's actual conduct—the conviction is not a crime of violence. Where a statute describes conduct on both sides of the line, we must determine whether it is divisible. If the statute describes different ways to prove a single set of elements, it is indivisible. In contrast, a statute is divisible if it lists alternative elements and thereby describes alternative crimes.

*United States v. Tagatac,* 36 F.4th 1000, 1004 (9th Cir. 2022) (cleaned up).

The "central feature" of the categorical approach is that sentencing judges must "focus on the elements, rather than the facts, of a crime." *Descamps v. United States,* 570 U.S. 254, 263, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013). That rule reflects the constitutional principle that juries—not judges—are responsible for finding the predicate facts on which any criminal sentence rests. *See Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In this way, "juries in our constitutional order exercise supervisory authority over the judicial function by limiting the judge's power to punish." *United States v. Haymond,* ––– U.S. ––––, 139 S. Ct. 2369, 2376, 204 L.Ed.2d 897 (2019). "A judge's authority to issue a sentence derives from, and is limited by, the jury's factual findings of criminal conduct." *Id.*

The Supreme Court thus developed the categorical approach to keep judges out of the facts in sentencing proceedings. *See Taylor v. United States,* 495 U.S. 600–02, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). As the Court recognized, when a crime covers a range of conduct, it is often impossible to decipher the precise facts which the jury found proven beyond a reasonable doubt. **\*787** *See id.* And *judges* are not authorized to determine those facts for themselves. Thus, a sentencing court assessing the "fact of a prior conviction" may infer only the *minimal* conduct—based on the elements of the crime—that was necessary for the prosecution to obtain the conviction. *See Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348.[1] The categorical approach, then, respects the role of the jury by vesting sentencing power in the judge *only* if the *elements* of the crime "necessarily impl[y]" that the jury found the defendant guilty of conduct that satisfies a statutory enhancement. *Taylor,* 495 U.S. at 599, 110 S.Ct. 2143; *see United States v. Marcia-Acosta,* 780 F.3d 1244, 1255–56 (9th Cir. 2015)

(reasoning that a sentencing judge can ask whether a defendant was "convicted" of a crime but not whether he "committed the crime").

In *Shepard v. United States*, the Supreme Court made this point clear. 544 U.S. 13, 25–26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). There, the Court explained that engaging in a factual approach—rather than a categorical approach—to increase a sentence based on a prior guilty plea could very well violate a defendant's Sixth Amendment rights:

> The sentencing judge considering the enhancement would make a disputed finding of fact about what the defendant and state judge must have understood as the factual basis of the prior plea, and the dispute raises the concern underlying *Jones* and *Apprendi*: the Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the State, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence. While the disputed fact here can be described as a fact about a prior conviction, it is too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to *Jones* and *Apprendi*, to say that [a judge is] clearly authorize[d] ... to resolve the dispute.

544 U.S. 13, 25–26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (cleaned up).

Put in other terms, notwithstanding the *actual* facts underlying the conviction, the Sixth Amendment requires the sentencing judge to "presume that the conviction rested upon nothing more than the least of the acts criminalized." See *Moncrieffe v. Holder*, 569 U.S. 184, 190–91, 133 S.Ct. 1678, 185 L.Ed.2d 727 (2013) (cleaned up).

To be sure, faithfully applying this required categorical approach sometimes yields odd results. For instance, in *Borden v. United States*, the Supreme Court held that a Tennessee conviction for aggravated assault did not constitute a "violent felony" under the Armed Career Criminal Act ("ACCA"). —— U.S. ——, 141 S. Ct. 1817, 1821, 210 L.Ed.2d 63 (2021). Another example comes from *United States v. Castro*, in which we recently held that a Montana conviction for Partner or Family Member Assault ("PFMA") is not a "crime of violence" under the Sentencing Guidelines. 71 F.4th 735, 744 (9th Cir. 2023).[2] There, we noted that "federal courts hate the categorical *788 approach" because "[i]t frequently produces absurd results." *Id.* at 738 n.2.

As I explain below, this case is yet another in which following the categorical approach produces the admittedly counterintuitive result that a type of *assault* is not a crime of violence. Yet no matter how much we may "hate" this analytical framework, *see* Oral Arg. at 1:25, Supreme Court precedent demands it, *see Taylor*, 495 U.S. at 600–02, 110 S.Ct. 2143, and we must obey, *see United States v. Werle*, 35 F.4th 1195, 1201 (9th Cir. 2022).

II.

Start by examining the elements of the predicate crime. Georgia's aggravated assault statute requires proof of simple assault that was committed in a manner that satisfies a statutory enhancement. O.C.G.A. § 16-5-21(a). Simple assault, in turn, may be committed either by: (1) attempting to injure the victim; or (2) placing the victim in a reasonable apprehension of injury. O.C.G.A. § 16-5-20(a). I shall refer to these separate offenses as 'attempt-to-injure' and 'reasonable-apprehension' assault, respectively.

The parties appear to agree that attempt-to-injure aggravated assault qualifies as a crime of violence. That makes sense. An "[a]ttempt[ ] to commit violent injury to the person of another," O.C.G.A. § 16-5-20(a)(1), matches with an "attempted use ... of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1). But the parties dispute: (A) whether Barlow was convicted of reasonable-apprehension assault instead of attempt-to-injure assault; and (B) whether

reasonable-apprehension aggravated assault qualifies as a crime of violence. I address each issue in turn.

### A.

To ascertain the elements for Barlow's crime of conviction, we must first determine whether Georgia's assault statutes are "divisible." See *Descamps*, 570 U.S. at 257, 133 S.Ct. 2276. Because all agree that they are divisible, Maj. Op. at 782,[3] we apply the modified categorical approach. See *Tagatac*, 36 F.4th at 1004. Under that approach, we examine the *Shepard* documents in the record to determine what type of simple assault formed the basis for Barlow's aggravated assault conviction. See *Shepard*, 544 U.S. at 26, 125 S.Ct. 1254.

Importantly, reviewing the *Shepard* documents does "not permit courts to substitute a facts-based inquiry for an elements-based one." *United States v. Sahagun-Gallegos*, 782 F.3d 1094, 1101 (9th Cir. 2015) (citation and internal quotation omitted); see *Descamps*, 570 U.S. at 263, 133 S.Ct. 2276 ("The modified approach thus acts not as an exception, but a tool."). Rather, in the case of a guilty plea, we use *789 the documents for the limited purpose of ascertaining whether the defendant "*necessarily* admitted [the] elements" of a specific statutory alternative. *Shepard*, 544 U.S. at 26, 125 S.Ct. 1254 (emphasis added). If the documents are ambiguous, we do not then look to the facts; we "presume that the conviction rested upon nothing more than the least of the acts criminalized." *Moncrieffe*, 569 U.S. at 190–91, 133 S.Ct. 1678 (cleaned up).[4]

The lone *Shepard* document in the record—the indictment—does not clarify which type of simple assault—attempt-to-injure or reasonable-apprehension—formed the basis for Barlow's aggravated assault conviction. The indictment alleges only that: (1) Barlow "did unlawfully make an assault upon the person of [the victim], with a handgun ... by striking [the victim] with said handgun," and (2) Barlow "did unlawfully make an assault upon the person of [the victim], with a handgun ... by shooting [the victim] with said handgun."

While "striking" and "shooting" someone with a gun certainly qualifies as 'violence,' I reiterate that in employing the required categorical approach, "we do not look to the facts underlying the conviction." *Tagatac*, 36 F.4th at 1004. That is the most fundamental rule underlying the categorical approach. *Taylor*, 495 U.S. at 600, 110 S.Ct. 2143 (creating the categorical approach and explaining that it forbids examination of "facts underlying the prior convictions"). Instead of analyzing whether the conduct alleged in the indictment might strike an observer as 'violent,' we must use the indictment to determine only what elements the State was required to prove—those that Barlow *necessarily* admitted—to obtain the predicate conviction. See *Pereida v. Wilkinson*, —— U.S. ——, 141 S. Ct. 754, 764–65, 209 L.Ed.2d 47 (2021); *Shepard*, 544 U.S. at 26, 125 S.Ct. 1254. And on that question, Barlow's indictment is silent. It does not clarify whether he was alleged to have committed attempt-to-injure or reasonable-apprehension assault. Because the indictment provides no clarity, we must assume Barlow's conviction rested upon the less-culpable conduct: reasonable-apprehension assault. *Borden*, 141 S. Ct. at 1822; *Moncrieffe*, 569 U.S. at 190–91, 133 S.Ct. 1678; see *Sahagun-Gallegos*, 782 F.3d at 1099-1100 (assuming the defendant was convicted of the lesser form of aggravated assault because the *Shepard* documents did not "cite[ ] a specific subsection" or "quote[ ] the elements of a specific subsection" of the simple assault statute).

This is where the majority's analysis parts from mine. The majority concludes that the indictment could be read as alleging *only* attempt-to-injure assault because the indictment uses the words "striking" and "shooting." Maj. Op. at 784. In other words, according to the majority, the allegations in Barlow's indictment would *not* authorize a jury to convict for reasonable-apprehension aggravated assault. Maj. Op. at 784. The problem for the acceptance of the majority's reading is that the Georgia Supreme Court has expressly held otherwise—twice. And, after all, we are dealing with a Georgia state conviction.[5]

*790 In *Simpson v. State*, the indictment alleged that Simpson "assaulted [the victim] *by shooting him with a gun* ...." 589 S.E.2d at 92 (emphasis added). Simpson argued that the trial court erroneously instructed the jury that it could convict him of either reasonable-apprehension assault or attempt-to-injure assault. *Id.* The Georgia Supreme Court disagreed, holding that an allegation of assaulting a victim "by shooting him with a gun" "defined *both methods* of

committing simple assault ....*" Id.* at 93 (emphasis added). The court upheld the conviction because a defendant can "be convicted for aggravated assault if he committed a simple assault *in either manner contained in the simple assault statute*, so long as the State proved that he did so by use of a gun." *Id.* (emphasis added). And it made clear that the "indictment did not and need not ... specify the manner in which the defendant committed the simple assault." *Id.* Rather, instructing the jury on reasonable-apprehension assault based on an allegation of "shooting [the victim] with a gun ... did not authorize a conviction in a manner other than that alleged the indictment." *Id.* at 92–93.

Similarly, in *Johnson v. State*, "[t]he indictment alleged that Johnson assaulted [the victim] by *striking her with a gun*, and that he assaulted [another victim] *by shooting her with a gun.*" 281 Ga. 229, 637 S.E.2d 393, 394 (2006) (emphases added). Again, Johnson argued that the trial court erroneously instructed the jury that it could convict him of either attempt-to-injure assault or reasonable-apprehension assault. *Id.* And—again—the Georgia Supreme Court disagreed. It concluded that an indictment alleging assault "by striking [the victim] with a gun" adequately alleged both types of simple assault. *Id.* at 395.[6]

The "shooting" and "striking" "with a gun" allegations in *Simpson* and *Johnson* are identical to those in Barlow's indictment. We therefore *must* conclude that Barlow's "indictment did not ... specify the manner in which [Barlow] committed the simple assault." *Simpson*, 589 S.E.2d at 93. Because the indictment does not specify, we *must* assume Barlow's "conviction rested upon nothing more than the *least* of the acts criminalized," *Moncrieffe*, 569 U.S. at 190–91, 133 S.Ct. 1678 (cleaned up) (emphasis added),[7] which here is reasonable-apprehension *791 aggravated assault.[8]

B.

The majority's reading of Barlow's indictment also parts with the Eleventh Circuit, which reached the opposite conclusion on an indistinguishable set of facts. Indeed, the Eleventh Circuit's interpretation of Georgia's aggravated assault statute should be persuasive because the Eleventh Circuit, after all, encompasses Georgia and is therefore more familiar with its statutes. *Cf. Factors Etc. Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 281–84 (2nd Cir. 1981).

In *United States v. Carter*, the Eleventh Circuit employed the modified categorical approach to determine whether an indictment for "shooting at" a victim constituted attempt-to-injure assault or reasonable-apprehension assault under Georgia's aggravated assault statute. 7 F.4th 1039, 1044 (11th Cir. 2021). The court concluded the allegation of "shooting at" a victim did "not reveal which version of simple assault was the basis for Carter's conviction." *Id.* It thus assumed the defendant was convicted of the least of the acts criminalized: reasonable-apprehension assault. *Id.*

The majority tries to distinguish *Carter* based on the sole presence of that lone preposition: "at." Maj. Op. at 784-85. It reasons that *Carter* is distinguishable because the indictment in that case alleged that the defendant committed assault by "shooting *at*" the victim, 7 F.4th at 1044 (emphasis added), while Barlow's indictment alleges assault by "*shooting*" and "*striking*" the victim. According to the majority, Georgia law permits a reasonable-apprehension assault conviction for "shooting at" a victim but not for "shooting" or "striking" a victim. Maj. Op. at 784-85. The majority is incorrect to draw this distinction.

First, it might be preferable to be shot *at* rather than *shot*, but only because—as a factual matter—being "shot" implies that the bullet struck home, whereas being "shot at" suggests the bullet missed its mark. Indeed, as the majority sees it, it is "meaningful" that the "battery [was] completed." Maj. Op. at 784-85. But Barlow was not convicted of the crime of *battery*—he was convicted of the crime of aggravated *assault*. And in Georgia, completing a battery is not an element of aggravated assault. In relying on this observation, the majority thus ignores "the categorical approach's central feature: a focus on the *elements*, rather than the facts, of a crime." *See Descamps*, 570 U.S. at 263, 133 S.Ct. 2276 (emphasis added); *Marcia-Acosta*, 780 F.3d at 1250 ("Consideration of only 'the elements of the crime of conviction' is the pivotal concept in applying the modified categorical analysis."). It mistakenly "look[s] to the facts underlying the conviction" to give weight to an element—contact—that is *not* an element of Barlow's crime of conviction. *792 *Tagatac*, 36 F.4th at 1004.[9] Under the categorical approach, the shooting allegation in Barlow's indictment is relevant *only* because the use of a gun is an aggravating element of simple assault under

Georgia law, and thus determines his crime of conviction. *Pereida*, 141 S. Ct. at 764–65.[10]

Second, the majority's reasoning cannot be squared with the Georgia Supreme Court's decisions in *Simpson* and *Johnson*. The indictments in those cases did not modify "shooting" or "striking" allegations with the preposition 'at.' See *Simpson*, 589 S.E.2d at 92–93; *Johnson*, 637 S.E.2d at 394–95. We are bound by *Simpson* and *Johnson*, so the majority's attempt to distinguish *Carter* is misplaced.[11]

Third, even assuming we could look to the facts underlying Barlow's conviction (we cannot), and assuming further that *Simpson* and *Johnson* were not binding (they are), the majority's 'shooting *at*' distinction actually strengthens the persuasive force of *Carter*. By alleging that the defendant shot "at" the victim, 7 F.4th at 1044, the indictment in *Carter* alleged that the defendant "direct[ed]" or "aim[ed]" his shots at the victim.[12] Indeed, in *Borden*, the Supreme Court held that a crime of violence is one where the "perpetrator direct[s] his action *at* ... another individual." 141 S. Ct. at 1825 (emphasis added). Yet *Carter* still: (1) held that the "shooting at" allegation did "not reveal which version of simple assault was the basis for Carter's conviction," 7 F.4th at 1044; and (2) "assume[d] that he was convicted under the least of the acts criminalized by the statute—here ... placing another in apprehension of receiving a violent injury." *Id.* at 1044–45 (cleaned up). Why would a different result follow from the "shooting" and "striking" allegations in Barlow's indictment, when those allegations are *less* suggestive of attempt to injure? After all, one could 'shoot' or 'strike' someone unintentionally (e.g., an inadvertent pull of the trigger), while one would tend to shoot '*at*' **\*793** a victim only with purpose. The majority does not explain this point.

Nor can it. The majority's attempted distinction is a part of its overall departure from our precedent applying the categorical approach. For example, in *Castro*, a panel of our Circuit deferred to the Montana Supreme Court's interpretation of Montana's PFMA statute. 71 F.4th at 742–43. Here, the majority ignores the Georgia Supreme Court's decisions in *Simpson* and *Johnson*. Maj. Op. at 784-86. And in *Castro*, we presumed that the defendant's conviction rested upon the lesser of the acts criminalized. 71 F.4th at 739. Again, here, the majority assumes that Barlow's conviction rested upon the greater. Maj. Op. at 784-86. Reading *Castro* and the majority opinion together, one might overlook that both were decided by the same Circuit, purported to apply the same legal framework, and were decided within mere months of one another.

Respectfully, I am surprised by the majority's claim that *Castro* has "no impact on our analysis" because the court there "did not apply the modified categorical approach at all because the statute at issue there was not divisible." Maj. Op. at 782 n.5. That distinction is irrelevant. As the Supreme Court has made clear, the modified categorical approach does not act "as an exception." *Descamps*, 570 U.S. at 263, 133 S.Ct. 2276. Under *either* the categorical approach or the modified categorical approach, we must *always* refrain from evaluating the facts and we must *always* presume that the conviction rested upon the least of the acts criminalized—which is *precisely* what we did in *Castro*. See 71 F.4th at 739 (citing *Moncrieffe*, 569 U.S. at 190–91, 133 S.Ct. 1678).

The majority's attempt to elude *Moncrieffe* and *Castro* merely because this case involves the *modified* categorical approach runs headfirst into this Circuit's decision in *Marcia-Acosta*, 780 F.3d at 1247–56. There, we considered whether the defendant's conviction for aggravated assault in Arizona constituted a crime of violence. *Id.* at 1247. Arizona's aggravated assault statute was divisible because it included, as alternative elements, intentional, knowing, or reckless simple assault. *Id.* at 1247–48. At the defendant's plea colloquy, the defendant's counsel stated that the defendant had "grabbed a metal bar ... hit the victim on the head, and ... caused an injury to the victim's skull ... intentionally." *Id.* at 1247. Relying on that factual-basis statement, the district court held that the defendant's conviction necessarily entailed *intentional* aggravated assault, a crime of violence. *Id.* at 1248.

We vacated the defendant's sentence and remanded for resentencing. *Id.* at 1255–56. Applying the *modified* categorical approach, we presumed that the defendant's conviction rested upon the *least* of the acts criminalized: reckless assault. *Id.* We disregarded the facts in the *Shepard* documents because the defendant was not "*required* to admit he acted knowingly or intentionally" to give effect to his guilty plea. *Id.* at 1253 (emphasis added). Rather, the conviction "*could* have been

supported by a finding of recklessness." *Id.* at 1252 (emphasis added). "Thus, in applying the modified categorical approach, we would be *required to assume* that Marcia–Acosta's conviction was for reckless assault." *Id.* at 1252 n.8 (citing *Moncrieffe*, 569 U.S. at 190–91, 133 S.Ct. 1678) (emphasis added).

The panel concluded:

> At bottom, the *Shepard* documents in this case at most suggest that Marcia–Acosta *committed* the crime of intentional aggravated assault. They do not show that Marcia–Acosta was *convicted* of that crime. On the contrary, from this record we cannot say whether he was ***794** convicted of the crime of *intentional* aggravated assault, the crime of *knowing* aggravated assault, or the crime of *reckless* aggravated assault.
> 
> ...
> 
> We can say for sure only that the *Shepard* documents do not prove that Marcia–Acosta was convicted of the crime of intentional (or knowing) aggravated assault, and so the modified categorical approach is not satisfied.

*Id.* at 1255–56 (emphases in original).

And in *Sahagun-Gallegos*, another case applying the modified categorical approach to an aggravated assault conviction, a panel of our Circuit did the same. 782 F.3d at 1098–1100. There, we assumed that the defendant committed the lowest form of simple assault because the *Shepard* documents did not "cite[ ] a specific subsection" or "quote[ ] the elements of a specific subsection" of the simple assault statute. *Id.* at 1099. The government claimed that was irrelevant because the *Shepard* documents showed that the defendant "could only have violated" the subsection that involved a crime of violence. *Id.* at 1100. We flatly rejected that argument: "[T]he Government's argument asks us to adopt an approach that *Descamps* expressly forbids, namely, to discover what [the defendant] actually did, and then use the facts, as opposed to the elements, of his prior conviction to determine whether he committed a crime of violence." *Id.* (cleaned up).

Therefore, contrary to the majority's assertion, the modified categorical approach does not relieve this Court of its duty—as articulated in *Castro*—to refrain from evaluating any facts beyond those *required* for the prosecution to obtain the conviction. *See id.* Where, as here, Barlow's conviction "*could* have been supported by a finding of [reasonable-apprehension assault]," we are "*required to assume* that [Barlow's] conviction was for [reasonable-apprehension assault]." *See Marcia-Acosta*, 780 F.3d at 1252–53 & n.8 (emphases added). The majority's refusal to apply the framework in *Castro* rests on a meaningless factual distinction that is flatly contradicted by our precedent.

With respect, I believe the majority today oversteps its role. It mistakenly asks whether Barlow "*committed*" attempt-to-injure assault, rather than whether he was "*convicted*" of attempt-to-injure assault. *See id.* at 1255. The only thing we can say for sure is that the form of simple assault underlying Barlow's *conviction* is uncertain. A faithful application of the categorical approach thus compels us to presume that Barlow's conviction constituted reasonable-apprehension assault. I would follow our Circuit and the Eleventh Circuit's precedent in so holding.

III.

The majority, concluding that Barlow's indictment necessarily alleged attempt-to-injure assault, declines to decide whether the elements for reasonable-apprehension aggravated assault are encompassed by the Sentencing Guidelines' definition of a crime of violence. Maj. Op. at 783-84 & n.9; *Moncrieffe*, 569 U.S. at 190–91, 133 S.Ct. 1678. Were the majority to reach the issue, binding precedent would again tie its hands—*Borden* answers, "No."

Recall that the Sentencing Guidelines define a crime of violence as one that has "as an element, the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). In *Borden*, the Supreme Court clarified the *mens rea* requirement applicable to a defendant's "use, attempted use, or threatened use" of force. 141 S. Ct. at 1821–23. It held that a predicate crime cannot qualify as a crime of violence unless it requires proof that the defendant "knowingly" **\*795** or "purposefully" used, attempted to use, or threatened to use force. *Id.* In other words, "a reckless offense cannot so qualify." *Id.* That is because the " 'use of force' denotes volitional conduct" of the

defendant, and the use of such force "against" another person "expresses a kind of directedness or targeting." *Id.* at 1825–27. Applying that reasoning, *Borden* concluded that Tennessee's statutory aggravated assault is not categorically a violent felony because such an assault can be committed recklessly. *Id.* at 1821–22.

So too here. To convict Barlow of reasonable-apprehension aggravated assault, the State of Georgia was required to prove: (1) an intentional act, which (2) in fact placed the victim in reasonable apprehension of harm. *Patterson v. State*, 299 Ga. 491, 789 S.E.2d 175, 175–76 (2016) ("All that is required is that the assailant intend to commit the act which in fact places another in reasonable apprehension of injury, not a specific intent to cause such apprehension." (cleaned up)). Georgia law imposes no mental culpability requirement be proven as to the defendant's actions with respect of the element of placing a victim in reasonable apprehension of harm. *Id.* Reasonable-apprehension aggravated assault "is a general intent crime, meaning that the State need not prove that the accused intended to place another in reasonable apprehension of receiving immediate bodily injury." *Cruz v. State*, 364 Ga.App. 96, 874 S.E.2d 136, 139 (2022).

> [P]ursuant to the express language of [O.C.G.A. § 16-5-20](a)(2), an assault under that subsection looks to *the victim's* state of mind, rather than *the accused's*, to establish the elements of an assault. There is an intent of the accused that must be shown, but it is only the criminal intent to commit the acts which caused the victim to be reasonably apprehensive of receiving a violent injury, not any underlying intent of the accused in assaulting the victim.

*Dunagan v. State*, 269 Ga. 590, 502 S.E.2d 726, 730 (1998) (cleaned up) (emphases added), *overruled on other grounds as recognized by Holmes v. State*, 272 Ga. 517, 529 S.E.2d 879, 882 (2000).[13] Because reasonable-apprehension aggravated assault does not require proof of the defendant's knowing or purposeful use, attempted use, or threatened use of force, *Borden* establishes that such reasonable-apprehension aggravated assault is not a crime of violence.

To be sure, Georgia adheres to the common law distinction between "general intent" and "specific intent" crimes, while *Borden* instead uses the Model Penal Code's culpability standards. *See United States v. Bailey*, 444 U.S. 394, 404, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (explaining the difference between the common law and the Model Penal Code approaches for defining the mental component of criminal culpability); *Borden*, 141 S. Ct. at 1823 (citing *Bailey*, 444 U.S. at 404, 100 S.Ct. 624) (applying the Model Penal Code approach). In other words, *Borden* drew the line at the Model Penal Code's formulation of "recklessness." 141 S. Ct. at 1823. So, ***796** applying *Borden* requires us to translate the Model Penal Code's "recklessness" into Georgia's common law framework.

Fortunately, Section 2.02 of the Model Penal Code translates "the common law requirement of 'general intent' " into the Model Penal Code's mental culpability framework. Model Penal Code § 2.02, Comment 5. According to that translation, when "the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts purposely, knowingly *or recklessly* with respect thereto." Model Penal Code § 2.02(3) (emphasis added). Because Georgia law does not prescribe a mental culpability requirement for the element of placing the victim in apprehension of harm, *Patterson*, 789 S.E.2d at 175–76; *Dunagan*, 502 S.E.2d at 730; *Cruz*, 874 S.E.2d at 139, the Model Penal Code is clear that that element can be satisfied through proof of recklessness, Model Penal Code § 2.02(3). Reasonable-apprehension aggravated assault can therefore be committed recklessly, and so is not a crime of violence. *Borden*, 141 S. Ct. at 1821–23.

Indeed, the Eleventh Circuit has twice held that a Georgia conviction for reasonable-apprehension aggravated assault "cannot qualify as a crime of violence" for this precise reason. *Moss*, 920 F.3d at 759; *Carter*, 7 F.4th at 1043. And *Borden* cited *Moss* with approval, 141 S. Ct. at 1823 n.2.

I would therefore join the Eleventh Circuit in concluding that reasonable-apprehension aggravated assault under Georgia law is not a crime of violence.

\* \* \*

As this case demonstrates, the categorical approach can sometimes produce results which at first appear absurd. But we are bound by it. And applying it here, Barlow's Georgia conviction for aggravated assault must be deemed reasonable-apprehension assault, which is not a crime of violence, and which should not have been treated as a crime of violence by the sentencing court. For this reason, I would vacate Barlow's sentence and remand for resentencing.

**All Citations**

83 F.4th 773, 2023 Daily Journal D.A.R. 10,082

**Footnotes**

| | |
|---|---|
| 1 | The PSR also identified two prior felony convictions in New Jersey related to possession and distribution of cocaine. The district court's finding that these separate convictions were not "controlled substance offenses" was the subject of the Government's cross-appeal, which was voluntarily dismissed and therefore is not discussed further. |
| 2 | Benson testified that Barlow claimed to be a police officer and when Barlow returned to his truck to find his "credentials" to prove he was a cop, she observed a second firearm fall out of the truck onto the ground. Barlow's counsel represents, without a record cite, that this second firearm was ultimately determined to be a pellet gun. |
| 3 | Notably, here the district court applied the more stringent clear and convincing evidence standard applicable to only a limited subset of sentencing enhancements in determining that Barlow had committed assault with a weapon under Montana law. *United States v. Lonich*, 23 F.4th 881, 910 (9th Cir. 2022). We offer no opinion on whether a lower standard of proof would have also been proper. |
| 4 | The term "crime of violence" as used in this section is defined in U.S.S.G. § 4B1.2(a), as either an offense under federal or state law punishable by imprisonment for a term exceeding one year, that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another," or (2) is any one of several enumerated offenses, including "aggravated assault." U.S.S.G. § 4B1.2(a); U.S.S.G. § 2K2.1, cmt. n.1. The district court did not articulate which of the two definitions it relied on when it concluded that Barlow's prior conviction qualified as a "crime of violence." Although the enumerated offense clause is another avenue for determining whether a prior conviction is a "crime of violence" under the Guidelines, we need not discuss it here given our conclusion that the elements clause applies. |
| 5 | The Partial Dissent attempts to demonstrate that our opinion evidences a departure from precedent by arguing that it is somehow at odds with the recent decision in *United States v. Castro*. But *Castro* did not apply the modified categorical approach at all because the statute at issue there was not divisible, and thus the framework it applied has no impact on our analysis. 71 F.4th 735, 738 n.3 (9th Cir. 2023). |
| 6 | *Moss* held that "[b]ecause Georgia's aggravated assault statute, O.C.G.A. § 16-5-21(a)(2) ... can be satisfied by a mens rea of recklessness when based on simple assault under § 16-5-20(a)(2), it cannot qualify as a crime of violence under the elements clause of the ACCA." See *Moss*, 920 F.3d at 759. *Carter* similarly held that the |

|   |   |
|---|---|
|   | defendant's aggravated assault conviction could not support his classification as an armed career criminal. *Carter*, 7 F.4th at 1041. Both cases so held because the *Shepard* documents did not indicate the portion of Georgia's simple assault statute under which the defendants were convicted, thus the courts assumed that the convictions arose under the "least of the acts criminalized" by the statute, that is, the "reasonable apprehension" form of simple assault. |
| 7 | *Borden* concerned the definition of "violent felony" in the Armed Career Criminal Act ("ACCA"), *id.* at 1821–22, but also governs our court's interpretation of "crime of violence" in the U.S.S.G., which "is defined identically to the phrase 'violent felony' in the ACCA." *United States v. Walker*, 953 F.3d 577, 579 (9th Cir. 2020). |
| 8 | Because the two counts in Barlow's indictment were not separately sentenced, they are not treated as separate qualifying predicates, and we may affirm if we conclude that either of the counts constitute a "crime of violence." See U.S.S.G. § 4A1.2(a)(2). |
| 9 | Therefore, resolution of whether a reasonable apprehension form of simple assault under Georgia law constitutes a "crime of violence" under the Guidelines is not necessary to the disposition in this case and we do not reach it. *See Yu v. Idaho State Univ.*, 15 F.4th 1236, 1244–45 (9th Cir. 2021). |
| 10 | Contrary to the Partial Dissent's argument, to reach our decision we have not looked to the facts underlying the conviction, but rather to the language contained in the indictment to discern the predicate conviction, as authorized by *Door,* 917 F.3d at 1151–52. The qualifying language in the indictment (that Barlow committed the assault "by striking [the victim] with said handgun" and "by shooting [the victim] with said handgun") is not only relevant to the aggravator element of an aggravated assault conviction but is also relevant to the simple assault element because the indictment states in various separate places that Barlow used a gun in committing the crime. |
| 11 | The Partial Dissent quarrels with our reading of *Johnson*. But our quote is not "selective." In *Johnson*, the Georgia Supreme Court expressly stated that "the trial court properly instructed the jury with respect to aggravated assault, stating unequivocally that in order to convict the defendant of [the] offense alleged [in the indictment (aggravated assault "by striking [the victim]")], it was 'necessary [to] ... show beyond a reasonable doubt that the defendant attempted to cause a violent injury to the alleged victim,' "—that is, the attempted battery form of simple assault. *Johnson*, 637 S.E.2d at 395. |
| 12 | Because we conclude that the prior conviction qualifies as a "crime of violence" under the elements clause definition under U.S.S.G. § 4B1.2(a)(1), we need not reach Barlow's arguments regarding whether his prior aggravated assault conviction also qualifies as a "crime of violence" under the Guidelines' alternative definition in the "enumerated offense clause" under U.S.S.G. § 4B1.2(a)(2). |
| 1 | In *Apprendi*, the Supreme Court remarked that the "the fact of a prior conviction" supplies a rare exception to |

**United States v. Barlow, 83 F.4th 773 (2023)**
2023 Daily Journal D.A.R. 10,082

the Sixth Amendment rule in criminal cases that "any fact that increases the penalty for a crime ... must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348.

2   We reached this result even though the defendant had "grabbed the victim by the neck and then threw her to the ground and hit her face into a glass door." Castro, 71 F.4th at 738 n.2 (cleaned up).

3   A criminal statute is divisible if it "lists alternative elements and thereby describes alternative crimes." Tagatac, 36 F.4th at 1004; see Descamps, 570 U.S. at 257, 133 S.Ct. 2276. Georgia's aggravated assault statute is divisible because *either* form of simple assault—attempt-to-injure assault *or* reasonable-apprehension assault—can satisfy one of the elements of the crime. See Simpson v. State, 277 Ga. 356, 589 S.E.2d 90, 93 (2003) (explaining that a defendant can be "convicted for aggravated assault if he committed a simple assault in either manner contained in the simple assault statute"). In other words, a defendant can commit either form of aggravated assault without committing the other form of aggravated assault. The aggravated assault statute therefore "describes alternative crimes" and is divisible. Tagatac, 36 F.4th at 1004; see United States v. Moss, 920 F.3d 752, 757 (11th Cir. 2019), *opinion reinstated*, 4 F.4th 1292 (11th Cir. 2021) (holding Georgia's aggravated assault statute is divisible because the simple assault statute "lists two separate crimes").

4   This principle is particularly salient here because Barlow's conviction could have been the result of a plea bargain. As the Supreme Court has explained, "if a guilty plea to a lesser ... offense was the result of a plea bargain, it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty" to a greater offense. Taylor, 495 U.S. at 601–02, 110 S.Ct. 2143.

5   We are bound by the Georgia Supreme Court's interpretation of Georgia statutes. *See, e.g.,* Johnson v. United States, 559 U.S. 133, 138, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010); Johnson v. Fankell, 520 U.S. 911, 916, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997) ("Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State.").

6   The majority misreads Simpson and *Johnson* as holding that an aggravated assault conviction for 'shooting' or 'striking' requires proving "the defendant attempted to cause a violent injury to the alleged victim." Maj. Op. at 785 – ——— (quoting Johnson, 637 S.E.2d at 395). That selective quote of a jury instruction in *Johnson* shows only that the defendant there was, in fact, convicted of attempt-to-injure assault. Barlow, however, pleaded guilty and so no such instruction was given. And Simpson—which did not qualify its holding as the majority claims—makes clear that an allegation of shooting "authorize[s] a conviction" for reasonable-apprehension aggravated assault, so long as the State "allege[s] the aggravating aspect of the simple assault"—here, the use of a gun. 589 S.E.2d at 93; *see* O.C.G.A. § 16-5-21(a)(2) ("A person commits the offense of aggravated assault when he or she assaults ... with a deadly weapon ...."). Thus, contrary to the majority's conclusion, Georgia case law establishes that allegations of "shooting" and "striking" *can* charge reasonable-apprehension assault. *But see* Maj. Op. at 784-85.

7   The majority flips this presumption on its head. It claims that it is "meaningful" that attempt-to-injure assault "is properly charged" based on Barlow's indictment. Maj. Op. at 784-85. That is the precisely the wrong way to frame the issue. The modified categorical approach requires us to ask whether the *lesser* crime—not the *greater* crime—is properly charged by the indictment. Moncrieffe, 569 U.S. at 190–91, 133 S.Ct. 1678. If it would be proper for a jury to convict for *either* crime, we must presume that the lesser crime is the crime of conviction. *See* Marcia-Acosta, 780 F.3d at 1252–53 & n.8 (citing Moncrieffe, 569 U.S. at 190–91, 133 S.Ct. 1678) (explaining that we are "required to assume" the lesser crime was the crime of conviction whenever the defendant "was not required to admit" that he committed the greater crime).

8   Even if there were any "lingering ambiguity" about whether Barlow's indictment alleged reasonable-apprehension assault, we must resolve such ambiguity in Barlow's favor. Pereida, 141 S. Ct. at 765 ("We have observed that these [*Shepard*] materials will not in every case speak plainly, and that any lingering ambiguity about them can mean the government will fail to carry its burden of proof in a criminal case." (internal quotation marks omitted)).

9   The majority is incorrect to claim that *Door* authorizes its approach. Maj. Op. at 784 n.10 (citing Door, 917 F.3d at 1151–52). In *Door*, we did not evaluate language in an indictment, because the defendant was convicted under a specific subsection that categorically constituted a crime of violence. 917 F.3d at 1152–53. Ultimately, the majority offers no precedent that supports reading an indictment for anything *other* than determining whether a defendant "necessarily admitted [the] *elements*" of the crime. *See* Sahagun-Gallegos, 782 F.3d at 1098 (quoting *Shepard*, 544 U.S. at 26, 125 S.Ct. 1254) (emphasis added).

10  For similar reasons, I cannot agree with the majority's assertion that the qualifying language in the indictment "is also relevant to the simple assault element because the indictment states in various separate places that Barlow used a gun in committing the crime." Maj Op. at 19 n.11. A person can commit reasonable-apprehension assault using a gun by, for example, *pointing* a gun at a person without any desire to shoot, or by shooting a gun to scare a victim rather than to make contact. The claim that the use of a gun implicates attempt-to-injure simple assault involves a *factual* determination—not compelled by the allegations in the indictment—that Barlow used the gun in an attempt to injure his victim. That factual inference is precisely what the categorical approach forbids. *See* Taylor, 495 U.S. at 600, 110 S.Ct. 2143; Sahagun-Gallegos, 782 F.3d at 1100–01.

11  I reiterate: (1) *Simpson* and *Johnson* are binding, *supra* note 5; (2) the allegations in the *Simpson* and *Johnson* indictments are identical to those in Barlow's indictment; and (3) *Simpson* and *Johnson* hold that such indictments permissibly allege reasonable-apprehension assault. From these three indisputable premises, it follows that Barlow's indictment alleges reasonable-apprehension aggravated assault.

12  Webster's II New Riverside Dictionary at 44 (Rev. Ed. 1996) (explaining that "at" is "[u]sed to indicate direction or aim," as in "[she] smiled at him").

**United States v. Barlow, 83 F.4th 773 (2023)**
2023 Daily Journal D.A.R. 10,082

13     As summarized by a Georgia treatise:

> Where the defendant is charged with the reasonable apprehension type of deadly weapon aggravated assault, ... *a general intent to injure is not an element of the offense.* Proof of the defendant's use of a deadly or offensive weapon which placed the victim in reasonable apprehension of immediately receiving a violent injury would be sufficient for conviction. In this type of deadly or offensive weapon aggravated assault, the state must show the intention to commit the act of using the deadly or offensive weapon, *not the intention to make the victims apprehensive.*
>
> Robert E. Cleary, Jr., *Kurtz Criminal Offenses and Defenses in Ga.*, A58 (2022 ed.) (footnotes omitted) (emphases added).

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.